Appeal 5032 from 2008. Mr. Steinberg, good morning. Welcome. Please proceed. Good morning, Your Honor. May it please the Court, it's 76 in Los Angeles. Better than 100. Yes, sir. In Omaha. Can you help me understand why this isn't a contract case as opposed to being pled as a takings case? Yes, Your Honor, if I may. The actions taken by the Army in the instant case were so gross that they passed the ambit of a breach of contract case. In other words, the franchise agreement with the government. But you do feel that that agreement was breached by the government, do you not? Well, Your Honor, in Count 8, for example, which the… No, no, no. Stick with me. Don't you agree that the government breached the contract? Yes, I do, Your Honor. But you seem to say beyond breaching the contract, they also took your property rights. That is correct, Your Honor. Now, if both a taking and a contract are in this case, why didn't you plead the contract breach? Well, if I may, Your Honor, in Count 8, for example, the government went into the location of my client, destroyed the cables and knocked down the building. I don't understand why you didn't either plead this as a contract case alone or at least as a contract and takings case, as opposed to what you actually did was to plead it only as a takings case. I'm just trying to understand what you're thinking. I did, Your Honor. I felt that the constitutional issues under the Fifth Amendment as to what happened in this case with the digging up and the destroying of property and the thievery… But why couldn't you have also pleaded contract counts? Was there some problem? Was there a statute of limitations problem or something? No, there was not, Your Honor. I was surprised. Tell me if I missed this. There's not a copy of the contract in the appendix material that we have. Is that correct? That is correct, Your Honor. It would be helpful to have that. Yes, Judge Sheldon, it would be. There are two types of contracts that we encounter and that the Court of Federal Claims encounters. There are Contract Disputes Act contracts where you have a specific option scheme available. When you get a decision of the contracting officer, you go to a Board of Contract Appeals or the Court of Federal Claims. Then there are contracts that are not covered by the Contract Disputes Act where you bring suit under the Tucker Act. Leaving aside for the moment your decision here to bring this case as a takings claim, what kind of a contract was this? Was this a Contract Disputes Act contract or a non-Contract Disputes Act contract? It was a non-Contract Disputes Act contract, Your Honor. It was a franchise agreement between Total TV and Griffin and the Army to provide cable service to Fort Irwin, which is an Army fort in California that trains the tank corps for the Army. You say that it was the contract that these various actions, you've referred to Claim 8, I guess, where there was material destroyed and so forth. Yes, Your Honor. And you're saying the government did that? Yes, they did, Your Honor. We know there's an obligation on parties to a contract to act in good faith and fair dealing towards each other. And if, in fact, what you said occurred, it would be the epitome of one party not acting in good faith or dealing fairly with the other so you'd have a perfect breach of contract claim. I thought that, Your Honor, and I seriously debated going on breach of contract. But these actions like, for example, destroying property and digging up cable. If you pled a breach of contract, what clause of the contract would you plead in the franchise agreement that they dug up cable? Mr. Steinberg, if this goes back, do you have a chance to rephrase your complaint as a contract? Yes, I do, Your Honor. I thought that the trial judge gave you an opportunity to amend and that you declined. Isn't that not right? She gave us an opportunity to amend, Your Honor, but her opportunity to amend said something to the effect in it that it would not be looked on favorably. There was some wording in there that… Well, one of the things that troubled me is that the closest you seem to get to a takings claim in my quick analysis was 0.8. But it wasn't clear from the waypoint it was phrased whether you were referring to negligent conduct by the government in digging up buried cable or intentional destruction of buried cable by the government. And if it's a tort case, we know the Court of Federal Claims is not allowed to entertain it. So it makes a difference in terms of jurisdiction and in terms of dismissibility under Rule 12b-6, exactly what you're charging. And it looked to me like you weren't very clear in that 0.8. That is correct, Your Honor. It was an intentional act on the part of the government that went in and…  No, I don't. In response to Chief Judge Michel's question, you do say at page 15 of the blue brief, given the flawed analysis in the Court of Federal Claims, it would have been fruitless to amend appellant's complaint, and the appellant chose to proceed on the original complaint filed in the Court of Federal Claims. So, I mean, it seems you chose to press ahead with a takings case. That is correct, Your Honor. The Court of Claims went on a regulatory, they made a decision on a regulatory basis. You mean it was a regulatory in terms of, instead of a physical taking? That is correct, Your Honor, instead of a physical taking. And that is the reason why it would have been no good to file the repetition in the Court of Claims. It is outside the scope of the record here, but can you give us some sense of what you think happened to this buried cable? What happened to the buried cable? Who dug it up and why and when and how, according to your information? The way I understood it, Your Honor, the Army contracted with the RCA, which was another group, to build some homes at Fort Irwin for the soldiers. And the deal was that the homes would belong to the soldiers for 20 years and then would revert to the Army. So when this began, the Army began ousting Total TV as the cable network for Fort Irwin by a series of acts by the soldiers and by Fort Irwin itself. I don't know whether that answers your questions, but it was a willful, deliberate, constant harassment and finally forcing Griffin Broadband to go broke and have to leave after their property was destroyed by the federal government. They literally went in there with caterpillars and knocked down the whole facility and dug up all the rest of the cable. And as far as the thievery and stealing was concerned at the Fort, Judge Mitchell, in a breach of contract action, it would be hard to allege that the Army was responsible for the thievery and cutting of cable at that time by the soldiers. Whereas in a taking case, we can show under the Fifth Amendment that this property was taken for public use by the Fort in itself. And as far as the issue of the United States being a sovereign race by the appellee, when the government took this property for public use, this private property, I think that that was acting under their sovereign ability. Am I understanding you right that in addition to the cable mentioned in paragraph 8, that there was a building that your client built? Yes, Your Honor. That your client owned? Yes, Your Honor. And that that building was destroyed? It was destroyed. Is that somewhere in 8? I believe it is. If I might have a moment, Your Honor. Thank you. Thank you. Certainly Judge Miller didn't understand it to involve a building because she summarizes count 8 at the top of page 5 of her opinion appendix 6. That is correct, Your Honor. So she thought you were only talking about buried cable in your count 8, not a building. I understand, Your Honor. I see that now reading count 8. Unfortunately, I left out the line where they bulldozed the entire facility down, as well as digging up the lines. Okay. Now, you had indicated that you wanted to reserve three minutes for rebuttal, so we're at the three-minute mark now. If I may, Your Honor, thank you very much. All right. Thank you. Mr. Hannafort? I please support. Well, what about count 8? Even if the other counts speak of contract rights, what about count 8 and buried cable? Buried cable's personal property, physical objects. If they own cable and they buried it and the Army destroyed it, maybe that is a physical taking. Well, Your Honor, it's important, I think, to remember the nature of Plaintiff's relationship with the government stems from the contract. No question that it all started with a contract and it was a contract start to finish. But nevertheless, in count 8, he pleads destruction of some physical property. Yes, Your Honor. So why doesn't that seem to be a takings-type claim rather than a contract claim? Well, there's no indication. If, in fact, the property was wrongfully destroyed, then that would have been government action not authorized. And in order to constitute a taking, the government's activity has to have been authorized by law. Well, we are quite familiar with the legal rules, but I'm just trying to figure out why this can't be a taking. Because the actions, the activities of the government, it was the Army's decision to knock down existing housing units on Fort Irwin, to which Griffin Broadband or its predecessor had supplied cable services, including the burial of other cabling. Right. And they had a 10-year contract, it was renewed for an additional 10 years, and I believe three or four years into the second renewal period, the first renewal period, the second contract period, the decision was to knock down this housing and replace it. And Griffin Broadband was instructed in December of 2005, and Mr. Steinberg actually alleges this in his complaint and says it in his brief, that Griffin Broadband was instructed to remove all of its property by June of 2006, I believe. And only then did the Army go about the business of knocking down the existing housing in order to replace it with new housing. And if, in fact, there was some destruction of Griffin Broadband's property, which presumably Griffin Broadband alleges was improper by the government, then it was not authorized action by the government and cannot constitute a taking. It was within... Under Florida law. Yes. Well, why would it be unauthorized? Because the government's decision was not to destroy Griffin Broadband's cable equipment. The decision of the government was to replace housing, and it afforded plaintiffs the opportunity to remove its existing property. So presumably if the... And the record, as Judge Schall noticed, the contract's not part of the record. Why is that, Ms. Stenberg? It's so helpful to have a copy of the contract. How come the parties didn't provide that to us? Have you seen the contract? Yes, Your Honor. It was... It was in the Court of Federal Claims? Yes. It's always good in a case like this for us to have the contract because it does put us at a bit of a disadvantage because it would have been interesting to see what kind of remedies are provided in the contract and so forth. Do you agree, Mr. Steinberg, that it is not, in fact, a contract, a disputes act contract? Actually, Your Honor, I don't know why it wouldn't be. It's a lease for... Well, that makes a big difference then because you've got a specific... You have to get a contracting officer's decision. That's correct. You have to go to either the board or the Court of Federal Claims within a certain period of time. That's correct, Your Honor. Are you saying this is a contract, a disputes act contract? For purposes of stating... Since it didn't state a takings claim, we moved to dismiss it or remove for summary judgment. I guess we moved to dismiss it on that basis. It was not necessary to determine whether it was a CDA contract or not. But ordinarily, I mean, the government is procuring goods and services, or services anyway, so it's hard to see why it wouldn't be a CDA contract. That was the only explanation the government could come up with for why the plaintiff chose to proceed as a takings... But the contract is in the record somewhere. Yes, below it. Was any claim filed with the contracting officer? Not to my knowledge, Your Honor. It's not alleged in the complaint, and no such claim or final contracting officer's decision was presented below. But since it was our analysis that the plaintiff failed to state a takings claim from the beginning, it wasn't necessary to determine whether it was a CDA claim, whether that procedure had been followed properly. Because it simply does not state, in the four corners of the complaint, it simply does not state a takings claim. But it sounds like, as to count eight, that you're saying, well, we're not liable for a taking because we gave him fair warning that he better come remove his buried table and he didn't bother to do it, and so therefore we're not liable. But that just means it's a takings claim that fails. It doesn't mean it isn't a takings claim at all. Well, but once again, Your Honor, the whole relationship of, I mean, presumably if, in fact, Griffin Broadbent's property was destroyed wrongfully, it's either a breach of the contract, it's either a breach of, as Judge Schall suggested, a breach of the duty to deal in good faith, or, in which case, it's still a breach of contract claim. Or it's improper government action. Correct. Which is not a taking. Exactly, Your Honor. Correct. Why would it be improper? I don't understand. My understanding is the plaintiff's asserting that it was an improper action, and it was such an egregious act by the government that it somehow transforms, that action transforms itself into a taking because of its impropriety. He may think it was an unauthorized, illegal, dastardly act, but I was asking you what you think. Do you think that the removal of the buried cable by the government, assuming that that's what the facts are, was unauthorized and illegal and ultra vires by the Army? It would be surprising if it were authorized by the contract. No, no, forget about the contract. If it's authorized because the power of the Army to operate its own bases would allow it to remove things that are no longer used. But if the allegation is that it was destroyed, not that it was taken for a public use or for the benefit of the public, it was destroyed, and if it were incorrectly destroyed or improperly destroyed or destroyed without authority, then once again, I mean, it constitutes an unauthorized action by the government, which may be compensable under some other theory, but is not a taking. And that's what is alleged. So you're saying, Ms. Stenberg, you can only go on what Mr. Steinberg asserts took place. That's correct, Your Honor. Yes. He's the master of his complaint. That's correct, and that's how we chose to allege this. Do you know as a factual matter, again, it's not in the record, but do you know as a factual matter, whatever happened to this cable? Was it left buried? Was it pulled out of the ground and used as cable? Was it melted down and sold as scrap, or was it just left underground? What actually happened to this cable, do you know? I don't know, Your Honor. I would assume that it would have been destroyed when knocking the building down and digging a new foundation or laying a new foundation for the new building. It would not be surprising if it were destroyed, but I don't know. I can see how it might have been cut in certain places, but it's a little hard for me, at least, to imagine how in its entire length it was, quote, destroyed. Well, again, because the case was dismissed prior to any discovery being taken, the facts of the case were not developed, and so all the information that we have is what's put in the complaint, and it just says that the lines were destroyed, destruction of physical plant, specifically the destruction of the cable lines. That's what's in the complaint. That's the only information that we have. All right. Anything further? No, Your Honor. All right. Thank you. Thank you. Mr. Steinberg, you have three minutes, if you need it, for rebuttal. Thank you, Your Honor. Judge Schall, I found that part in the complaint and in the brief. It's in the brief on page, the appellant's brief on page 6. It states that appellants state in their eighth cause of action that appellee U.S., through its employees and contractors, broke, dug up, and damaged appellant's physical plant, including cable service lines. So you're saying at page 6 of the brief, you're referring to Count 8, Plan 8. And referring to the complaint in paragraphs 15 and 16. But did the government take that for its public use? Was there some public use that the government took that property for? Well, Your Honor, if the government took it for their own use. . . You're not alleging that severed underground cable is somehow inuring to the use of the government. No, Your Honor. And that they did it under some authorization that we are going to hereby convert this cable to a public use. Well, Your Honor, by offer of proof, they contracted out with another cable service and started rebuilding the structures at the place where Total TV, Griffin Broadband, existed. As far as public use is concerned, Your Honor, it applied and gave sustenance to all the soldiers on the base and their families. These structures that were there. Thank you very much, Your Honor. All right, we'll take the case to your right. Thank you to both counts. Thank you, Judge.